THE STATE OF OHIO, APPELLEE, *v.* COONEY, APPELLANT.

[Cite as State v. Cooney (1970), 24 Ohio App. 2d 12.]

(No. 29244—Decided October 22, 1970.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. William Coyne,* for appellee.

*Mr. Richard L. Gunn,* for appellant.

MANOS, J. Joseph Francis Cooney, hereinafter referred to as defendant, was indicted on three counts of murder in the first degree, and on three counts of murder in the first degree while perpetrating an arson. The jury returned a verdict of not guilty as to the former, but found the defendant guilty on all three counts as to the latter.

The pertinent facts adduced at the trial indicate that on April 21, 1968, the defendant, while residing temporarily at his mother's home, returned to that dwelling after drinking at a neighborhood cafe, consumed a cup of coffee, and then went to his room upstairs. Immediately thereafter the home was engulfed in flames. Running into the kitchen, the defendant attempted to reach a telephone but failed as the fire blocked his path. He ran out the front en-

trance to obtain assistance, and as he exited the door locked behind him. A neighbor arrived opportunely and obtained a ladder, which the defendant climbed under the peril of arcing electrical wires in order to rescue Randy Schwed, his nephew, who was crying for help from a third floor window. Following arrival, the Cleveland Fire Department extinguished the fire and thereafter retrieved the bodies of Vivian Pitelka, the defendant's mother, Daniel Schwed, the defendant's nephew, and Susan Schwed, the defendant's niece, all of whom died in the flames.

The prosecutor introduced evidence to establish that the defendant had earlier that evening quarreled with his mother over a bayonet belonging to Randy Schwed's father. In addition, testimony was introduced under the Similar Acts Statute, R. C. 2945.59, to show the defendant's motive, intent, absence of mistake or accident, or the scheme, plan, or system in doing the act in question. This testimony disclosed that some few years before, the defendant, while residing in South Carolina with his mother, burned a dwelling to the rear of her home, and after an argument openly threatened to burn the home in which she resided as well.

Two expert witnesses were called on behalf of the State to testify as to the nature and origin of the fire. They were Captain John R. Lyons, who had 30 years of experience with the Cleveland Fire Department Fire Investigation Unit, and who had investigated approximately 5,000 fires, and Captain Frank Hubach, who had 23 years experience as a member of the Fire Investigation Unit, and who had participated in extinguishing 1,500 fires. Both men attended seminars in fire investigation, and at the time of his testimony Captain Lyons was an instructor on the subject at Cuyahoga Community College. Their combined answers to questions interposed described the technical aspects of the fire, the physical evidence found at the residence, and, over objection, the conclusions drawn from such evidence. The witnesses testified that the fire was not of natural origin nor accidental in nature. The fire, in their opinion, was started by a human agency at three points;

namely, the rear porch of the home, the kitchen, and the downstairs hallway. The testimony of these witnesses, and their conclusions, abounded with common sense explanations of the technical aspect of the fire. Fully explained was the fire's low and high burning pattern, its rapid spread and the ultimate build-up of intense heat.

For a conviction in a first degree murder case in which arson is involved four facts must be established: (1) that there was a fire; (2) that it was of incendiary origin; (3) that death occurred as a direct result of the fire; and (4) that the defendant was the guilty party.

The questions assigned for resolution in this appeal relate to the second and fourth requirements. The defendant claimed, under authority of a 1915 case, as to the second requirement that the court erred in admitting expert testimony regarding the origin of the fire. The sole issue for discussion, all others being eliminated after careful consideration, is whether or not a member of a Fire Investigation Unit, who qualifies as an expert, may give opinion evidence.

In *Carter* v. *State* (1915), 4 Ohio App. 193, the defendant was convicted of arson based primarily upon the testimony of three firemen who gave their opinion as to where the fire in question started. The court in reversing the lower decision stated at page 200:

" * * * The first witness, Conway, was not present at the fire at all, and testifies that when he reached the premises the following day the fire was extinct. He was permitted to give his conclusions of fact as to the origin of the fire upon the theory that he had qualified as an expert upon this subject. We think he should have been permitted to testify only as to what he saw, and the province of the jury was to draw conclusions from those facts."

In *Sergi* v. *State* (1934), 17 Ohio Law Abs. 190, one of two cases involving the same issue as *Carter,* two chiefs of local fire departments and a state deputy fire marshall testified that the fire in question was caused by rugs soaked with gasoline. The court held that the conclusion reached by the witnesses was error not prejudicial to any right of the defendant for the reason that each testified that he

saw and examined the gasoline soaked rugs. For a more recent case following the rationale of *Sergi,* see *State* v. *Lakes* (1964), 120 Ohio App. 213.

The law permits considerable latitude to a witness who as an expert testifies to conclusions reached from facts observed. In *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77, the court in deciding that a welder is capable of giving expert testimony restated the following well accepted guidelines at page 81:

"No one can validly contend that an expert in a particular field that is beyond the experience, knowledge or comprehension of a layman should be silenced where such knowledge is vital to a proper determination of litigation. Rather, this court has continuously held that in all proceedings involving matters of a scientific, mechanical, professional, or other like nature, requiring special study, experience or observation not within the knowledge of laymen in general, expert opinion testimony is admissible to aid the court or the jury in arriving at a correct determination of the litigated issue."

For a sampling of other cases permitting experts to testify on divergent subjects see *Hall* v. *Nagel* (1942), 139 Ohio St. 265; *Bahl* v. *Byal* (1914), 90 Ohio St. 129; *C., C., C. & St. Louis R. R.* v. *Lindner* (1931), 40 Ohio App. 265; *Burchett* v. *State* (1930), 35 Ohio App. 463.

In 1915, the *Carter* court considered the technological sophistication of the witnesses and decided that the knowledge possessed by them was not beyond the knowledge possessed by the average juror. Therefore, it decided that the jury was capable of drawing its own conclusions from the facts presented. It is without argument that in the last 55 years overwhelming scientific advancements have been made in man's understanding of the nature and origin of fire as the record in this case significantly and abundantly demonstrates. Similarly, the experience of lay persons with fire has diminished with technological change and development. No longer are the scientific terms and concepts of the origin of fires within the grasp of lay persons. This makes expert testimony crucial in affording assistance to the jury. Considering the technological advances in the

study of fire investigation in conjunction with the guide lines of *McKay Machine Co.,* this court no longer deems *Carter* as controlling. For cases in other states permitting firemen who sustain competency and are qualified to testify as experts, see *George* v. *Bekins Van & Storage Co.* (1949), 33 Cal. 2d 834, 205 P. 2d 1037; *Virginia Surety Co.* v. *Shlegel* (1967), 200 Kan. 64, 434 P. 2d 722; *State* v. *Gore* (1940), 152 Kan. 551, 106 P. 2d 704; *Capital Transport Co.* v. *Segrest* (1965), 254 Miss. 168, 181 So. 2d 111; *Commonwealth* v. *Nasuti* (1956), 385 Pa. 436, 123 A. 2d 435.

It is well to bear in mind that admissions of opinion evidence in prosecutions for arson are governed by the same rules as are applicable in prosecutions for other crimes. The general rule is, if a witness has acquired knowledge or skill by experience, observation or practice on a subject with which the lay person is not supposed to be acquainted, he may give his opinion on it.

Defendant also objected to the admission of this expert testimony on the ground that it purported to answer the ultimate question. This is an obvious misconception. The ultimate question for the jury to decide in this case was whether the defendant was guilty of the crime with which he was charged and not whether the fire was of incendiary origin. Assuming that the jury determines the fire to be of incendiary origin, it does not necessarily follow that the defendant started it.

This court holds, therefore, that a member of a fire investigation unit possessing knowledge beyond the grasp of the ordinary juror should be permitted not only to testify as to what facts were observed, but should be permitted to state the conclusions drawn from those facts. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WASSERMAN, J., concurs.

WHITE, C. J., participated in this case and approved the opinion and syllabus. Judge White died before the decision date.