Williams, J.
 

 The sole question presented is whether
 
 *310
 
 the trial court committed prejudicial error iu directing a verdict for the defendant.
 

 To maintain her action the plaintiff was required to prove not only negligence or unskillfulness amounting to malpractice on the part of the defendant but also that the act of malpractice was the proximate cause of injury and damage to plaintiff.
 

 The appellate court took the position that the evidence was sufficient to establish
 
 prima facie
 
 negligence on the part of the defendant but that there was lack of proof to show that the negligence was the proximate cause of injury and damage.
 

 What was the proof of defendant’s negligence?
 

 The bony union which results from a proper setting of the broken parts of the neck of the femur may be followed by a disunion through absorption by the processes of nature within a few weeks after the union takes' place. This disunion can be disclosed only by an X-ray picture. In the instant case there was evidence to show that accepted practice required photographing by X-ray at the time the absorption could reasonably be expected to have taken place, if at all, to determine whether there had been such absorption. The evidence further shows that after the first setting there was a bony union, and that when- plaintiff attempted to walk at about the time an absorption might have taken place she felt a grating sensation in the hip and complained to the defendant that the broken ends of the bone were not together, and that thereafter no X-ray photograph was taken or advised until too late. Under the circumstances there was evidence that required the submission of the issue of negligence of the defendant to the jury under the rule laid down in
 
 Ault
 
 v.
 
 Hall,
 
 119 Ohio St., 422, 164 N. E., 518, 60 A. L. R., 128, and in
 
 Bowers
 
 v.
 
 Santee,
 
 99 Ohio St., 361, 124 N. E., 238, and kindred cases.
 

 Was there evidence of proximate cause which re
 
 *311
 
 quired the submission of that issue to the jury? In directing a verdict the trial court said:
 
 ‘1
 
 The testimony is undisputed showing that, instead of a greater probability of the fact being that the condition would not have resulted except for the negligence of the doctor, the evidence indisputably shows that the greater probability of the truth is that it would have resulted whether the doctor had been guilty of negligence or not.”
 

 In cases of malpractice in which the tortious wrongdoing consists of an act of omission, the
 
 causa causcms
 
 is usually difficult of ascertainment and frequently impossible of proof. A good illustration is presented by instances in which the neck of the femur is broken and the surgical treatment consists of an attempt to bring about a union of the parts by placing and maintaining them in apposition. The uniting of these parts after setting must be accomplished by the healing processes of nature, and essentially there is always the possibility that nature will fail to achieve the desired result even when the attending physician has properly done everything known to surgical science; similarly, if the treatment has been unskillful or negligent and the broken parts do not unite there is, too, the possibility that the nonunion would have resulted even with due care and skill on the part of the physician.
 

 Proof of proximate cause in cases of this kind is not dependent upon the percentage of recoveries to normal condition of the broken neck of the femur in a number of like cases over a given period of time. The law of causation can not thus be reduced to a mathematical certainty through the medium of statistical experience in other surgical cases in which the patient has suffered a like breakage. "Were the rule otherwise, more than fifty per cent of recoveries would be sufficient to require submission to the jury and fifty per
 
 *312
 
 cent or less would necessitate direction of a verdict for the defendant.
 

 There are numerous reported cases in which it has been held that where there are two or more causes that might have produced the failure of the bones to unite, for only one of which the defendant is responsible, and there is no evidence to show to which cause the nonunion is attributable, a verdict must be directed for the defendant. Such cases are collected in
 
 Hubach
 
 v.
 
 Cole, ante,
 
 137, 140.
 

 A careful analysis of such cases lends logically to the conclusion that the underlying reason for the rule is that there was no proof that the failure of the bones to unite was probably caused by the alleged act of malpractice. This element of probability in maintaining the affirmative of an issue is recognized in this state.
 
 Davis
 
 v.
 
 Guarnieri,
 
 45 Ohio St., 470, 15 N. E., 350, and
 
 Cincinnati, Hamilton & Dayton Ry. Co.
 
 v.
 
 Frye,
 
 80 Ohio St., 289, 88 N. E., 642, 131 Am. St. Rep., 709.
 

 The jury deals with probabilities and it is' for the jury in weighing the evidence to determine where the probability lies. If a jury finds from the evidence that a fact probably exists, then it has been proved by a preponderance of evidence.
 

 In
 
 Davis
 
 v.
 
 Guarnieri, supra,
 
 at page 490, the court says: “It is not necessary to the determination of the issues in a civil case (with very few exceptions, of which the present is not one), that the triers should
 
 believe
 
 the existence of any material fact, but that the probabilities, when weighed by them, preponderate in favor of the fact which they find to be established by the proof. It is legally and logically impossible for it to be probable that a fact exists, and at the same time probable that it does not exist.” This language is cited with approval in
 
 Cincinnati, Hamilton & Dayton Ry. Co.
 
 v.
 
 Frye, supra.
 

 The exceptions referred to are cases in which a
 
 *313
 
 higher degree of proof than the greater weight of the evidence is required.
 

 In
 
 Gedeon, Admr.,
 
 v.
 
 East Ohio Gas Co.,
 
 128 Ohio St., 335, 190 N. E., 924, at pages 339 and 340, it is pointed out in a discussion of proximate cause that the tort-feasor is legally liable only for the probable- consequences of his wrongful act.
 

 The principle that the efficient cause of a result in malpractice may be proved by evidence of reasonable probability of legal nexus between the wrongful act and the injury finds support in leading cases.
 
 Lippold
 
 v.
 
 Kidd,
 
 126 Or., 160, 269 P., 210, 59 A. L. R., 875;
 
 Ramberg
 
 v.
 
 Morgan,
 
 209 Iowa, 474, 218 N. W., 492.
 

 In the instant case the court is dealing with the problem of a directed verdict and only a question of law is presented'for determination.
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 119, 160 N. E., 629.
 

 The rule on directing a verdict is stated in
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246: “Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.”
 

 In applying this test in various cases that may arise the nature of the proof must be kept in mind. The evidence adduced may be direct and positive as to all ultimate facts, or the evidence may be direct or circumstantial with one or more of the ultimate facts left wholly to inference. Thus in some cases proof of proximate cause may be positive and in others inferential. In the case at bar, if there be any proof of probability of direct causal connection, it must arise
 
 *314
 
 as an inference from the evidence adduced. Proximate cause was an ultimate fact to be proved by plaintiff and, before the trial court could submit the case to the jury, there must have been evidence which would warrant the jury in drawing an inference of probability. There is no such evidence in the record; in fact the evidence is' that there was a lesser probability rather than a greater that bony reunion would have taken place. Under the circumstances reasonable minds could reach but one conclusion on this issue and that unfavorable to the plaintiff.
 

 The instant case differs from most of the reported cases in that the record shows that the chance of reunion of the broken parts of the bone upon a remanipulation and resetting was lost because the defendant had let the patient go on walking with crutches for three'months without taking an X-ray photograph or giving other attention to the breakage. That evidence leads to the inquiry whether the loss of the chance of reunion may be the basis of an action on the theory that the tort has directly caused the loss of chance and resulted in damage. This theory is advanced in
 
 Craig
 
 v.
 
 Chambers, 17
 
 Ohio St., 253, 261;
 
 Rogers
 
 v.
 
 Kee, 171
 
 Mich., 551, 137 N. W., 260, 265;
 
 Burk
 
 v.
 
 Foster,
 
 114 Ky., 20, 69 S. W., 1096, 59 L. R. A., 277, 279; holding the theory untenable is
 
 Connellan
 
 v.
 
 Coffey,
 
 122 Conn., 136, 187 A., 901. No other cases have been found dealing specifically with this question.
 

 In
 
 Craig
 
 v.
 
 Chambers, supra,
 
 the action was for an alleged malpractice of the surgeon in treating a dislocated shoulder and injured arm, which resulted in a verdict for the defendant. In the opinion on page 261, this language appears: “But, in view of one part of the argument of the counsel of the defendant in error, it is proper to say, that we suppose that any want of the proper degree of skill or care which
 
 diminishes the chances of the patient’s recovery,
 
 prolongs his illness,
 
 *315
 
 increases his suffering, or, in short, makes his condition worse than it would have been if due skill and care had been used, would, in a legal sense, constitute injury.” (Italics' ours.)
 

 A close examination of this case shows what was said by the court was at best
 
 obiter dictum.
 

 In every case of malpractice, there would be a loss of whatever chance of physical recovery might come from proper medical and surgical treatment; but there may have been no real chance of recovery, for nature might fail to cure in any event. The problem of causation gets back to its original position; there may be malpractice in failing to use the care required by law in treating a broken bone, followed by loss of chance of recovery which might have been possible with proper treatment, and yet the case be one in which there could be no healing of the bone even with the best treatment. As has been stated, the patient cannot recover damages unless the act of malpractice is the direct and proximate cause of injury. Loss of chance of recovery, standing alone, is' not an injury from which damages will flow.
 
 Connellan
 
 v.
 
 Coffey, supra.
 

 Since there was no evidence from which proximate cause could be reasonably inferred, the trial court did not err in directing a verdict for defendant and the appellate court did not err in its judgment.
 

 The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias and Zimmerman, JJ., concur.
 

 Gorman, J., concurs in the syllabus.