MOORE, Admr., Appellant,

v.

UNIVERSITY OF CINCINNATI HOSPITAL, Appellee.

[Cite as *Moore v. Univ. of Cincinnati Hosp.* (1994), 93 Ohio App.3d 616.]

Court of Appeals of Ohio,
Franklin County.

No. 93API08–1156.

Decided Feb. 15, 1994.

*Marlene Penny Manes* and *Karen L. Mastruserio,* for appellant.

*Lee Fisher,* Attorney General, *Marilena R. Walters* and *Jeffrey R. Goldsmith,* Assistant Attorneys General, for appellee.

TYACK, Judge.

On June 1, 1989, Jamie Moore went to the emergency room of the University of Cincinnati Hospital ("University Hospital") and was diagnosed as having an exacerbation of his asthma. Moore was twenty-five years old and had sickle cell beta plus thalassemia, a comparatively mild form of sickle cell disease. Once he was admitted to University Hospital, his asthmatic condition improved and his blood tests were normal. However, on June 4, 1989, Moore began complaining of musculoskeletal pain. The pain worsened and based on this and complete blood count results, the physicians treating Moore diagnosed him as having a vaso-occlusive/sickle cell painful crisis. Moore was given Demoral for the pain.

By June 6, 1989, Moore's condition had worsened. He complained of severe pain and further complete blood counts showed a downward trend. The Demoral was discontinued and replaced with intravenous morphine injection. Dr. Kay Johnson wrote the order for morphine, which called for six milligrams every three hours around the clock. The first dose of morphine was administered at 5:30 p.m., and a nurse noted that Moore seemed very much relieved of pain. By 7:30 p.m., Moore had become agitated and was pulling at his intravenous tube. At 9:15 p.m., Moore had cardiac arrest, was resuscitated, and had cardiac arrest again. Moore died at 10:25 p.m. on June 6, 1989. The autopsy report indicated that Moore died as a result of a sickle cell crisis, complicated by bone marrow infarction which resulted in fat embolization.

On February 27, 1991, Mary Moore, Moore's mother and administrator of his estate, filed a complaint in the Ohio Court of Claims against University Hospital. The complaint consisted of a survival action and a cause of action for wrongful death, both alleging negligence and failure to obtain informed consent with resultant pain and suffering. The action was bifurcated and, on January 25, 1993, a trial commenced on the issue of liability. At the close of the plaintiff's case,

University Hospital moved for dismissal pursuant to Civ.R. 41(B)(2). On May 24, 1993, Ms. Moore filed a motion for oral argument for the purpose of discussing proposed findings of fact and conclusions of law. This motion was denied on June 7, 1993. On July 20, 1993, the Court of Claims filed its judgment entry and findings of fact and conclusions of law, which granted University Hospital's (hereinafter "appellee") motion for dismissal. Ms. Moore (hereinafter "appellant") has appealed to this court, assigning two errors for our consideration:

"1. The trial court erred to the prejudice of the plaintiff-appellant by granting the defendant's motion for dismissal pursuant to Rule 41(B)(2) at the close of plaintiff's case.

"2. The court erred in denying plaintiff-appellant's motion to reopen and/or to call additional witnesses on the issue of proximate cause as [it] relates to damages."

Under her first assignment of error, appellant sets forth several arguments. The principal argument is that this was a "loss of chance" case, in which she established professional negligence. She asserts that she did not need to establish that the negligence was the proximate cause of Jamie Moore's death, since his death was an issue involving damages and this was a bifurcated trial. Appellant's arguments fail, however, because the Supreme Court of Ohio expressly rejected the loss-of-chance theory of recovery in *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97. The syllabus in *Cooper* states:

"In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiff's evidence indicates that a failure to diagnose the injury prevented the patient from [having] an opportunity to be operated on, which failure eliminated any chance of the patient's survival, the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis, treatment and surgery, the patient probably would have survived."

In defining probability, the Supreme Court stated that probable means more than fifty percent likely. *Id.* at 252, 56 O.O.2d at 151, 272 N.E.2d at 103. Although tort law has changed in many ways in Ohio since 1971, the Supreme Court of Ohio has not overruled the syllabus law set forth above.

Throughout the trial and on appeal now, appellant has contended that appellee was negligent in failing to recognize that Moore's sickle cell painful crisis would and did in fact lead to bone marrow infarction, which in turn led to fat embolization, which ultimately resulted in Moore's death. Appellant contends that appellee should have recognized this condition and should have performed a blood transfusion. The trial court, however, found that appellant failed to prove

that appellee was negligent in not performing a blood transfusion. It further concluded that appellant failed to show that if a transfusion had been performed, it was more probable than not that Moore would have survived. Based on the testimony as set forth below, we find no error with the trial court's findings of fact and conclusions of law with regard to appellant's wrongful death claim.

Appellant's expert, Dr. Oswaldo Castro, testified extensively on sickle cell disease, the potential for bone marrow infarction and fat embolization, and the use of blood transfusions. While Castro testified that transfusion would have been Moore's only chance of survival, he stated on more than one occasion that it was difficult to say whether it was more probable than not that Moore would have survived had he received a transfusion. Indeed, he could not say otherwise because only one third of his own patients who received transfusions survived.

Under the rule of law in *Cooper*, appellant failed to establish proximate cause. Proximate cause being a required element of liability in a wrongful death action based on medical malpractice, the trial court did not err in dismissing the case based on that cause of action. See *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus.

■ Appellant also argues that the trial court failed to address her cause of action based on lack of informed consent and that the trial court failed to decide the survival action. We find no merit in appellant's argument regarding informed consent. This is not a case involving a procedure performed for which the physician failed to inform the patient of its consequences. Rather, this case is based on an alleged failure to properly diagnose and subsequently treat accordingly. In addition, we do not disturb the trial court's conclusion that appellee was not negligent in its diagnosis and treatment of appellant's decedent as to the bone marrow infarction. As for appellant's argument that the trial court found negligence and even gross negligence after the motion to dismiss was made, the court stated that this was not a finding but merely an assumption made at that time for argument's sake. It is also well settled that a court speaks only through its journal.

■ We do, however, find merit in appellant's argument regarding the survival action. Appellant contends that her decedent should recover for pain and suffering as a result of appellee's failure to administer pain medication as ordered, and that the trial court did not address this cause of action in its disposition of the case. While the trial court does state in its findings of fact that an order for morphine was written and administered in the afternoon of June 6, 1989, there are no further findings on that matter. At trial, appellant showed that due to inadequate pain relief, Dr. Johnson ordered that Moore's pain medication be changed from Demoral to morphine, with the morphine to be

administered every three hours around the clock. The first dose was given at 5:30 p.m. on June 6, 1989. There was sufficient evidence showing that a second dose, which should have been administered at 8:30 p.m., was not given. There is no doubt from the evidence presented that Moore was in constant pain, that his pain medication got progressively stronger, and that the 8:30 p.m. dose should have been given and then noted in his hospital reports. Therefore, given this evidence and the fact that the trial court failed to make findings and conclusions on the survival cause of action, the trial court erred in dismissing the entire action. We remand the case for further proceedings on the survival action, only with regard to pain and suffering due to the alleged failure to administer the 8:30 p.m. dose of morphine.

Accordingly, appellant's first assignment of error is overruled as to the wrongful death action and sustained as to the survival action as discussed above.

In her second assignment of error, appellant contends that the trial court should have allowed her motion to reopen the case and call additional witnesses on the issue of proximate cause and damages. Appellant bases this contention on her failed argument that proximate cause in this case is a damages and not a liability issue. Given our previous discussion regarding proximate cause being an issue of liability, the trial court did not err in denying appellant's motion to reopen. Accordingly, appellant's second assignment of error is overruled.

In conclusion, appellant's first assignment of error is overruled in part and reversed in part, appellant's second assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

WHITESIDE, P.J., and BOWMAN, J., concur.